HALSEY FOLLETT, RESPONDENT, *v.* HENRY BADEAU AND WARREN BENNETT, APPELLANTS, IMPLEADED WITH ALBERT MARTIN.

*Trusts in lands — cannot be created by parol for unincorporated religious societies.*

The plaintiff and others, some of whom were Universalists and Liberal Christians, and others Baptists, signed a paper by which they agreed to pay certain sums of money to be used in the erection of a house of worship, the paper stating that when erected the house should, when not occupied by the Baptists, "be open for any Christian denomination contributing" to its erection and paying their portion of the incidental expenses. The money was paid to Martin, a clergyman of the Baptist church, who promised the plaintiff and others of the Universalists and Liberal Christians that the building should be open for worship by them when requested; and when not in use by the Baptists. With the money so received, Martin bought a lot, taking the title in his own name, and erected a building which was thereafter used by the Baptists on Sundays, and such other times as they appointed. It was also used by the Universalists from the time of its erection down to the spring of 1880.

In 1872, Martin being about to leave the village, conveyed the premises by a warranty deed to Delong and Wright, as trustees of the First Baptist Church of Schenevus, and their successors. No trust was expressed in the deed. There was not, nor has there ever been, any such corporation, nor were Delong and Wright trustees of any legally constituted body. They took the conveyance without paying any consideration and with full knowledge of the rights of the subscribers. The premises are still held by them *or* persons claiming to be their successors.

They having refused to allow the building to be used by any other denomination than the Baptist, the plaintiff brought this action to have them restrained from so closing the house.

*Held,* that the subscribers had acquired no rights in the premises, nor was any valid trust created in their favor which would authorize the court to grant the relief sought.

APPEAL from a judgment overruling a demurrer to the complaint.

There are three defendants, Badeau, Bennett and Martin. The alleged cause of action against Martin is distinct from that against Badeau and Bennett and is not before the court for consideration on this appeal. Badeau and Bennett demurred and their demurrer was overruled. The allegations of the complaint were as follows:

In December, 1867, a subscription paper was prepared in the words following:

"SCHENEVUS, N. Y., *December* 12, 1867.

"We, the undersigned, do pledge ourselves to pay the sums we severally subscribe, to a committee hereafter to be appointed by the First Baptist Church and Society of Maryland, N. Y., for the purpose of building a house of worship in Schenevus village under the direction of the above named church and society, being governed in expenditures by the amount contributed. The house (when not occupied by the Baptist church) shall be open for any Christian denomination contributing for the erection of the house and paying their portion of incidental expenses. All subscriptions for this object shall become binding when two thousand five hundred dollars is pledged."

To this the plaintiff subscribed twenty dollars. Eight others whose names are given, and a large number whose names are not given, also subscribed large sums of money. The plaintiff and these persons, whose names are given, were Universalists and Liberal Christians. Other persons who were Baptists also subscribed. The subscriptions were paid to the defendant Albert Martin, who was a clergyman of the Baptist denomination, and who had prepared the subscription. To obtain the subscription he had promised the plaintiff and others of the Universalists and Liberal Christians, that if they would subscribe, the edifice, when built, should be open for worship by the Universalists when requested, and when not in use for the regular worship of the Baptists.

With the money thus subscribed Martin bought a lot and took the title in his own name, and with the money he also built thereon a church edifice. After the building was completed and until about April, 1872, the Baptists had a settled minister and held services in the building on Sundays, and at such times as they thought fit to appoint. And the Universalists, represented by the plaintiff and other subscribers, from time to time, held meetings for worship conducted by clergymen of their denomination on occasions when no meetings were held by the Baptists.

In April, 1872, Martin being about to move from the village, executed a warranty deed of the premises to Delong and Wright.

describing them as trustees of the First Baptist Church of Schenevus and their successors. No trust is expressed in the deed. There was not then, nor has there ever been, any corporation by the name of the First Baptist Church of Schenevus, nor were Delong and Wright trustees of any legally constituted body, nor were they competent to take a conveyance as trustees.

Delong and Wright paid nothing for the conveyance to them, and they took with full knowledge of the equitable rights of the plaintiff and other subscribers. They entered into possession, and the church edifice has ever since been in the possession and control of Delong and Wright, or of persons claiming to be their successors, who hold the same for the benefit of said Baptist denomination. Until about the spring of 1880, the plaintiff and other subscribers of the Universalist denomination had from time to time appointed and held meetings in said house at times when no meetings were appointed to be held by the Baptist denomination.

In the spring of 1880, the defendants Badeau and Bennett, and one Wilcox, had possession and control of the premises and of said house, claiming to be trustees and successors to said Delong and Wright, and claiming to act as trustees and to control said house for the benefit of the Baptists. In August, 1880, the plaintiff and others of the original subscribers made an appointment for a religious meeting to be held in said house, to be conducted by a clergyman of the Universalist denomination, at a time when the house was not used by the Baptists. They made a formal written request to the said Badeau, Bennett and Wilcox. Badeau and Bennett refused to allow the house to be opened for such purpose, or for any meeting to be conducted by a Universalist clergyman. Wilcox refused to have anything to do with the matter, and immediately declined to act any further in controlling the house, and resigned as trustee. And the defendants, Badeau and Bennett, insist that no meetings shall be held in said church by the Universalists, and that no denomination has any rights there except the Baptist.

Judgment is asked enjoining them from closing the house against any subscribers to the fund, or against any meeting for worship appointed to be conducted by a Universalist, when the house is not used by the Baptists. Judgment is also asked against Martin for a recovery of the moneys paid, in case it shall be adjudged that the

plaintiffs and the subscribers have lost their rights by reason of Martin's conveyance.

*L. L. Bundy*, for the appellants.

*Samuel A. Bowen*, for the respondent.

LEARNED, P. J.:

The question of Martin's liability to the plaintiff and to the other subscribers to refund the money is not here. The only question is whether an action is stated against Badeau and Bennett.

A point is made by these defendants that there is a misjoinder in making Martin a defendant with them; also that there is a misjoinder in not making Delong and Wright parties who appear to have the title to the premises. These are points, especially the latter, which are by no means free from difficulty. On the face of the complaint it would seem that Delong and Wright still had the title, and a decree establishing rights in the real estate should not be made in the absence of the persons having apparently the legal title. But it is best to examine the case on the merits.

The conveyance to Martin gave him the fee. Nothing in the deed declared that he held as a trustee. He never executed any writing (aside from his conveyance to Delong and Wright) which declared a trust in the land; and no trust could be declared except by a writing. (2 R. S., 134, 135, §§ 6, 7; Laws 1860, chap. 322.)

But, again, if we could consider the subscription paper as a declaration that the land purchased by Martin was held, or to be held, on a trust therein indicated, other difficulties arise. Suppose that paper be construed to declare a trust, in substance, to hold the lands for the use of the Baptists and for the use of the Universalists when not needed by the Baptists, then, first, such a trust is not authorized by the Revised Statutes (1 R. S., 728, § 55); second, it would create a perpetuity. (*Adams* v. *Perry*, 43 N. Y., 499.) Martin then held the fee charged with no trust.

Next Martin conveyed to Delong and Wright, describing them as trustees of the First Baptist Church of Schenevus. There was no such corporation; and therefore this conveyance was not a conveyance to the corporation, as it probably might have been con-

strued to be had any corporation been in existence. The words, therefore, "trustees, etc.," were merely descriptive, and the fee vested in the grantees absolutely. Their knowledge of the subscription paper could have no more effect than Martin's knowledge of the same paper. The words "their successors in office" had no effect, for there was no such office, and therefore there could be no successors.

The plaintiff urges that they took no title, and cites Laws of 1855, chapter 230. The object of that statute is well known. It was to put an end to a custom which had existed in respect to the churches of the Romish faith. It had been customary to convey churches and other property to the bishop of the diocese and his successors. And the object of the statute was that, in future, such property should, as in other denominations, be held by the religious corporation and not by any person holding an ecclesiastical office. The statute however was repealed. (Laws of 1862, chap. 147.)

If it should be urged that the conveyance to Delong and Wright might be construed to be for the use of the Baptists or partly for the Universalists, then the answer is that the conveyance would vest nothing in the grantees, because it was not made to a corporation organized under the statutes. The title would remain in Martin. A conveyance for the benefit of a congregation or society for the purpose of religious worship must be made directly to that congregation or society, if it be incorporated, and not to any person for its benefit. If the congregation or society is not incorporated, there is no authority for holding real estate in trust for it. But even without deciding whether the title is in Martin or in Delong or Wright, we remark that the plaintiff claims to enforce an alleged trust in the land for the benefit of himself and his associates. And the plaintiff urges, in his behalf, the doctrines which have been applied in England and elsewhere to charitable uses. But such uses in land are abolished in this State, except as preserved and modified by the statute. (1 R. S., 727, § 45; *Holmes* v. *Mead*, 52 N. Y., 332.) The doubt on this point, sustained by the case of *Williams* v. *Williams* (8 N. Y., 525), no longer exists. If, then, it be claimed that Martin or Delong and Wright, or Badeau and Bennett hold this land, on the trust to permit the plaintiff and others of his associates to hold meetings there for worship,

the difficulty is that such a trust in land cannot be lawfully created under the statute, and cannot be enforced as a charitable use.

We regret that the defendants refuse to carry out the terms on which the plaintiff and others contributed money. It would seem that the religious instruction which they have received in this church edifice has not taught them ordinarily fair dealing; and certainly has not impressed on them the rule to do unto others as they would have others do to them. But, for the reasons above given, we think that the plaintiff cannot have the relief he has sought against Badeau and Bennett in this action.

The judgment is reversed and judgment for the defendants given on the demurrer, without costs, with leave to plaintiff to amend on payment of costs.

Present — LEARNED, P. J., RUMSEY and OSBORN, JJ.

Judgment reversed and judgment for defendants on demurrer, without costs, with leave to plaintiff to amend complaint on payment of costs.